**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|    Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-06-595 |
| | § | C.A. No. C-07-477 |
| JEFFREY DAVID REBER, | § | |
|    Defendant/Movant. | § | |

**ORDER DISMISSING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE,
AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Jeffrey David Reber's ("Reber") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 30.)[1] The Court ordered the government to respond (D.E. 32), and the government filed a response in which it argues that Reber should be denied relief. (D.E. 39.) Reber sought and received a motion for extension of time to file his reply (D.E. 40, 41), and filed his reply on April 21, 2008 (D.E. 42), which the Court has also considered.

As discussed in detail herein, Reber lists three separate claims in his motion. Reber's third claim, which arguably falls outside the scope of his waiver of § 2255 rights, fails on its merits. His first and second claims are subject to dismissal because he waived his right to file those claims. Even if they were properly before the Court, moreover, they fail on their merits. For these reasons, discussed in more detail herein, the Court DENIES his § 2255 motion. Additionally, the Court DENIES Reber a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1] Dockets entries refer to the criminal case, C-06-cr-595.

## II.  FACTS AND PROCEEDINGS

A.  **Summary of the Offense**[2]

On August 10, 2006, Texas Department of Public Safety ("DPS") Commercial Vehicle Enforcement Inspectors, with the help of a DPS trooper, were conducting inspections at the northbound Texas DPS Weight Station, located approximately one mile south of Falfurrias, Texas, on U.S. Highway 281.  At approximately 6:10 a.m., the officers observed two vehicles stop on the northbound side of the road, just south of the inspection station.  One of the vehicles, driven by Reber, appeared to be a Wal-Mart tractor-trailer, and the second vehicle was a pickup truck.  The DPS inspectors observed the tractor-trailer make a turn-around at a crossover south of the weight station.  The inspectors also noticed that the pickup truck turned around.  Due to this suspicious behavior, the DPS officer followed the tractor-trailer and initiated a traffic stop based on the driver's apparent attempt to avoid the weight station.  The trooper asked Reber to return to the DPS Inspection station for an inspection of the tractor-trailer, and Reber complied.

Once at the inspection station, the DPS inspectors conducted an inspection of the tractor-trailer and interviewed Reber.  They observed that the tractor and trailer was painted with Wal-Mart company logos.  During their interview with Reber, the inspectors asked him for the commercial vehicle log, as well as his commercial driver's license.  Reber indicated that he had none.  He stated that he was traveling to New Braunfels, Texas, where he was going to drop off the trailer, to be picked up by someone else.

When the inspectors inquired as to why Reber had turned around prior to the weight station, he said that he needed to use the restroom at the rest area.  The DPS officials also asked if he had any

---

[2]  The offense conduct as set forth herein is derived from Paragraphs 4 through 7 of Reber's Presentence Investigation Report ("PSR").

illegal contraband in the trailer, to which Reber replied, "Not to my knowledge." Reber consented to a search of the tractor-trailer.

During a further inspection of the tractor-trailer, the officers noticed that the tractor-trailer displayed fictitious fiberglass license plates, which contained actual license plate numbers to a Wal-Mart truck. Further investigation and contact with a Wal-Mart Safety Manager led the inspectors to conclude that the license plates were fictitious, that the tractor-trailer was not an authentic Wal-Mart vehicle, and that Reber was not a Wal-Mart driver. A continued inspection revealed a false compartment located at the front of the trailer. A Border Patrol agent and service canine were summoned to the scene, at which time the service canine alerted to the false compartment. Reber stated that he did not know what was in the compartment and declined to answer all further questions.

Within the false compartment, the officers located 37 bundles of cocaine weighing 183.76 kilograms (net weight) and 204 bundles of marijuana with a gross weight of 1,390 kilograms.

**B.     Criminal Proceedings**

On August 23, 2006, Reber was charged in a two-count indictment with possession with intent to distribute approximately 204 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) ("Count One"); and possession with intent to distribute approximately 1,390 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) ("Count Two"). (D.E. 10.)

On September 26, 2006, Reber pleaded guilty to Count One pursuant to a written plea agreement with the government. (D.E. 15, 16.) The plea agreement provided that, in exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government would recommend that he receive a three-level credit for acceptance of responsibility and recommend a

sentence at the lowest end of the applicable guideline range. (D.E. 16 at ¶ 2.) The plea agreement contained a voluntary waiver of Reber's right to appeal and to file a § 2255 motion:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 16 at ¶ 7) (emphasis in original). The agreement was signed by both Reber and his counsel. (D.E. 16 at 5.)

At his rearraignment, the Court specifically questioned Reber under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and, in particular, his right to file a § 2255 motion:

> THE COURT: ... I'm going to discuss one more matter that you're giving up in this plea agreement that we've not gone over, and that is a right to file a post-conviction remedy. It's also known as a 2255 or writ of habeas corpus. If you go forward today, you also give up that right forever. It's independent of these other rights that we've talked about.
>
> You would ordinarily have had a right to file this, one of these motions and try to set aside your conviction and/or your sentence. But if you go forward today, you give up that right forever. You could have challenged your conviction or sentence based on ineffective assistance of counsel, constitutionality or jurisdiction. But if you go forward today, you give up that right forever. Do you understand that?
>
> ***

4

>THE COURT: Mr. Reber?
>
>DEFENDANT REBER: Yes, ma'am.

(D.E. 36, Rearraignment Transcript ("R. Tr.") at 11-12.) It is clear from the foregoing that Reber's waiver was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

Additionally, Assistant United States Attorney Booth made reference to the waiver of § 2255 rights in her summary of the plea agreement. (R. Tr. at 14.) After hearing that summary, Reber testified that the summarized agreement was his plea agreement, that it was his entire agreement, and that he understood it. (R. Tr. at 15.) Reber also testified that no one had made him any other promises or agreements other than what was contained in the written agreement, and that no one had promised him leniency, a motion for downward departure or safety valve. (R. Tr. at 15.)

The Court showed him the plea agreement, and Reber identified it as his plea agreement, and told the Court it was his signature on the last page. (R. Tr. at 15-17.) Reber testified that he had read the document completely before he signed it and that he had discussed it completely with his attorney before he signed it. (R. Tr. at 17.) Reber further testified that no one had forced him to plead guilty and that his decision to plead guilty was entirely voluntary. (R. Tr. at 22.)

The Court inquired as to whether Reber had discussed with his attorney how the Sentencing Guidelines might apply in his case, and Reber said that he had. (R. Tr. at 18-19.) He also told the Court that he understood his attorney's opinion of the guidelines was not necessarily the same as the Court's. (R. Tr at 21-22.) Additionally, although Reber was pleading guilty only to Count One, which involved the cocaine, it was made clear at his rearraignment that the marijuana would also be taken into account at sentencing:

>THE COURT: I also want to talk about relevant conduct. Now, would somebody go through each and every, the maximum amount . . . of drugs that you intend to prove at time of sentencing for each of these five gentlemen.
>
>\*\*\*
>
>THE COURT: Okay. And [Assistant United States Attorney] Patterson, for Mr. Reber?
>
>MR. PATTERSON: Your Honor, he's pleading to Count 1, which is the cocaine. The relevant conduct will be Count 2, which is the marijuana in Count 2. It's about 1,390 kilograms.
>
>THE COURT: I'm sorry?
>
>MR. PATTERSON: He's pleading to Count 1, which is cocaine. The relevant conduct is going to be the marijuana in Count 2, which is about 1,390 kilograms or marijuana.
>
>THE COURT: And plus the –
>
>MR. PATTERSON: About 204 kilograms of cocaine in Count 1.
>
>THE COURT: Is that right, Mr. Cunningham [defense counsel]?
>
>MR. CUNNINGHAM: It is, Your Honor.
>
>THE COURT: No dispute about that?
>
>MR. CUNNINGHAM: No dispute at all.
>
>THE COURT: Do you understand that, Mr. Reber?
>
>DEFENDANT REBER: Yes, ma'am.

(R. Tr. at 19-20.)

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR") and Reber, through counsel, filed written objections to the PSI. (D.E. 17, 23.) Specifically, counsel objected to the PSR's failure to reduce the offense level for Reber being a minor participant pursuant to U.S.S.G. § 3B1.2(a), its failure to award safety valve relief, and objected to the imposition

of any fine due to Reber's lack of means to pay a fine within the guideline range. (D.E. 23 at 1-2.)

Sentencing occurred on December 12, 2006. (D.E. 26; see also generally D.E. 35, Sentencing Transcript ("S. Tr.").) Defense counsel initially indicated that he was going to object to the fact that the government was not going to recommend safety valve relief, but after a recess and the opportunity to speak with the agent who debriefed Reber, that objection was withdrawn. (S. Tr. at 2-8.) Indeed, Reber himself agreed to the objection being withdrawn. (S. Tr. at 8-9.) Defense counsel objected to the PSR's failure to give Reber a minor role adjustment, but the Court overruled that objection. (S. Tr. at 9-10.)

The Court adopted the PSR as written and sentenced Reber to the low end of the applicable guideline range, 168 months in the custody of the Bureau of Prisons, to be followed by a five-year supervised release term. (S. Tr. at 12; D.E. 26, 28.) The Court downwardly departed to a $75 fine and also imposed a $100 special assessment. (S. Tr. at 12; D.E. 26, 28.) Judgment of conviction and sentence was entered on December 15, 2006. (D.E. 28.)

Consistent with his waiver of appellate rights, Reber did not appeal. Reber's § 2255 motion and supporting memorandum were received by the Clerk on December 14, 2007. (D.E. 30, 31.) The motion is timely.

### III. MOVANT'S ALLEGATIONS

In his motion, Reber raises three grounds for relief, all of which are ineffective assistance of counsel claims. In the first, he contends that his counsel was constitutionally ineffective because he failed to investigate whether Reber was properly given Miranda warnings at the time of his arrest. Reber's second ground for relief alleges that his counsel should have requested "specific performance" of the plea agreement by asking the Court to require the government to file a motion for downward departure pursuant to U.S.S.G. § 5K1.1. Third and finally, he claims that his counsel

misled him by telling him that the dismissed count of the indictment (the marijuana count) would not be used to increase his sentence. In his supporting memorandum, Reber elaborates on this claim, arguing that his counsel told him that he would receive reductions pursuant to the safety valve and Section 5K1.1 and would be sentenced to no more than 70 months.

For the reasons set forth herein, Reber's claims all fail.

## IV. DISCUSSION

### A.    28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

### B.    Reber's Waiver of § 2255 Rights

As discussed infra at Section IV.D., Reber's first and second claims are not properly before the Court because they fall within the scope of his § 2255 waiver. See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights). That is, his claim of ineffective assistance of counsel based on a failure to investigate or raise alleged Miranda violations and his claim that counsel was ineffective at sentencing for failing to object to

Reber not receiving a downward departure motion are not claims that directly affects the validity of his plea or waiver. Thus, they both fall within the scope of his waiver and are barred. See infra Section IV.D. Even if they were properly before the Court, moreover, they fail on their merits. See infra Sections IV.E and IV.F.

Reber's third claim, however, is that his counsel misled him about the consequences of his plea and, specifically, led him to believe that the dismissed count of the indictment would not be used to increase his sentence. This claim arguably raises a challenge to the validity of his plea and consequently his waiver. See White, 307 F.3d at 343-44. Thus, the Court turns to the merits of this claim.

### C.  Alleged Ineffective Assistance of Counsel As to Plea

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."). When viewing the record as a whole, it is clear that Reber cannot show prejudice

9

and thus is not entitled to relief as to his claim.[3]

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Reber must show that, absent his counsel's deficiencies, he would have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This is a showing that cannot be met here.

Notably, as pointed out by the government in its response (D.E. 38 at 5), Reber does not allege in his motion or supporting memorandum that he would have proceeded to trial had his counsel not been ineffective. Indeed, even after receiving the government's response pointing out this deficiency, Reber filed a reply and nowhere therein does he assert that he would have proceeded to trial had he known his true sentencing exposure. (See generally D.E. 42.)

Moreover, the rearraignment transcript clearly establishes that Reber's decision to plead guilty was his own and that it was entirely voluntary. (See supra at pages 4-6 (setting forth pertinent parts of plea colloquy).) Significantly, Reber was specifically advised by the Court at his rearraignment that the additional marijuana from the dismissed count would be taken into account in determining his sentence, and he told the Court that he understood. (R. Tr. at 19-20, set forth supra at page 6.)

---

[3] The affidavit of Reber's counsel expressly denies the factual claims of deficiency, including that he ever told Reber he would definitely receive a reduction for substantial assistance or safety valve relief. (D.E. 38, Affidavit of David Cunningham.) It also includes the letter Cunningham sent to Reber prior to his plea, outlining his likely exposure if he pleaded guilty versus going to trial. Significantly, the letter expressly includes the marijuana from the dismissed count in all guideline estimates. Moreover, nowhere in that letter does Cunningham make any promises of safety valve relief or relief for substantial assistance, nor does he indicate that a sentence of 70 months might be possible. (See id. and attached letter) The Court need not resolve this factual dispute, however. As discussed herein, even if counsel was deficient, Reber has not alleged or shown prejudice.

Thus, his belated claim that his plea was somehow involuntary because his counsel did not advise him that the marijuana would be taken into account at sentencing is flatly contradicted by the record. Reber's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Reber's sworn statements at the rearraignment show that he fully understood the rights he was giving up under the plea agreement, and that no one was forcing him to plead guilty. See Wilkes, 20 F.3d at 653. They also clearly show that he was aware that he would in fact be sentenced based on the marijuana from the dismissed count, and that no one had promised him he'd receive safety valve relief or a downward departure motion for substantial assistance.

Furthermore, at sentencing, after having seen the PSR and his guideline range, Reber told the Court that he was still satisfied with the advice and efforts of his attorney. (S. Tr. at 8.) This fact further undermines his claim that his attorney gave him incorrect advice concerning his likely sentence.

In short, Reber cannot overcome his testimony at the rearraignment to now show that he would have insisted on going to trial but for counsel's performance. Because Reber cannot prove the prejudice prong of the Strickland inquiry, it is unnecessary to determine whether his counsel's performance was deficient. His claim of ineffective assistance in the plea process fails.

Because the Court concludes that Reber's sole challenge to the validity of his plea agreement fails, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

### D.    Waiver of § 2255 Rights

As noted, it is clear from the rearraignment that Reber understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable.  See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up).  Again, Reber's statements under oath are entitled to a strong presumption of truthfulness.  Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84.  Those statements support the Court's conclusion that his waiver was knowing and voluntary.  His first and second claims, asserting that his counsel was constitutionally ineffective for failing to investigate and at sentencing, clearly fall within the scope of that waiver.

Moreover, even if his first two claims were properly before the Court, they would not entitle Reber to relief.

### E.    Ineffective Assistance of Counsel For Failing to Raise a Miranda Challenge

Reber's first ground for relief, even if it were not barred by his waiver, would fail on its merits.  As an initial matter, any direct challenge alleging a violation of his Miranda rights is procedurally barred because he failed to raise it on direct appeal.  See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001); United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000).  A district court may consider a defaulted claim only if the petitioner can demonstrate either (1) cause for his default and actual prejudice or (2) that he is actually innocent of the crime charged.  Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999).  Reber makes no argument that he is actually innocent.  Further, he offers no explanation as to why he failed to raise this issue on appeal.  Thus, this ground for relief is procedurally barred.

Moreover, to the extent that Reber is claiming that his counsel should have raised an objection

based on a failure to observe his Miranda rights at the weight station, such a claim would not have been meritorious. Notably, his guilty plea waived any such challenge. Brown v. Butler, 811 F.2d 938, 940 (5th Cir. 1987) (guilty plea waives claims regarding Miranda violations).

Additionally, Miranda's protections were not implicated here because Reber made no incriminating statements.[4] That is, even if he had not pleaded guilty, the evidence against Reber was based not on self-incriminatory statements he made during the inspection at the weight station (for he made none), but on physical evidence found on the scene. Cf. United States v. Brathwaite, 458 F.3d 376, 382 & n.7 (5th Cir. 2006) (physical evidence need not be suppressed for a violation of Miranda, even if that evidence is the fruit of an unwarned statement by a defendant); United States v. Stevens, 487 F.3d 232, 242 (5th Cir. 2007) (a violation of Miranda would not prohibit use of a defendant's in-custody statements granting consent to a search). Reber does not challenge his consent to search the tractor-trailer, nor does he challenge on any grounds the search and seizure of the drugs in the false compartment of the tractor. Thus, even if some violation of Miranda did occur, Reber has not shown how counsel raising it would have affected the outcome of the case. Reber thus has not shown prejudice from his counsel's failure to raise any Miranda objection.

For all of these reasons, this claim fails.

## F. Ineffective Assistance of Counsel For Failing to Challenge the Government's Alleged "Breach" of the Plea Agreement

In order to establish prejudice as to his claim that counsel was constitutionally ineffective at sentencing for failing to challenge the alleged "breach" of the plea agreement, Reber must show a reasonable probability that, but for counsel's alleged errors, he would have received a lesser

---

[4] Because Reber made no incriminatory statements, the Court does not address the antecedent issue of whether Reber was "in custody" such as to trigger Miranda protections.

sentence. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000); United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004). This is a showing that Reber has not made.

Even if counsel had objected to the government's failure to move for a downward departure, that objection would have been overruled. As an initial matter, and contrary to Reber's contention, the plea agreement did ***not*** obligate the United States to move for a downward departure based on substantial assistance, pursuant to U.S.S.G. § 5K1.1. In fact, the plea agreement itself makes clear that the government will ask for a downward departure under § 5K1.1 only if Reber provides "substantial assistance," as determined in the government's discretion. (D.E. 16). Specifically, the agreement states:

> Furthermore, should the Defendant provide substantial assistance as outlined in U.S. Sentencing Guidelines, Section 5K1.1 and 18 U.S.C. 3553(e) the Government will recommend to the Court a reduction in the Defendant's sentence and recommend a sentence commensurate with the value, completeness, and truthfulness of the Defendant's information. ***This agreement does not obligate the Government Attorney to make a motion for downward departure if in the Government Attorney's evaluation the Defendant had not provided substantial assistance.*** . . . [I]t is understood the Government's determination of whether the Defendant has cooperated fully and provided substantial cooperation, and the Government's assessment of the value, truthfulness and completeness of the Defendant's cooperation are solely within the judgment and discretion of the Government and shall be binding upon the Defendant. ***The Defendant agrees and understands that the decision whether to file such a motion rests within the sole discretion of the Government, and that the decision whether to grant such a motion rests solely with the Court.***

(D.E. 16 at ¶ 3 (emphasis added); see also R. Tr. at 13-15 (testimony of Reber affirming the government's description of his plea agreement, which included the statement that the defendant is offered the opportunity to provide substantial assistance, but that "it's the United States who gets to make the call whether or not their cooperation is considered substantial").)

14

Not only does the plea agreement itself foreclose any objection on the grounds that the government failed to make a downward departure motion, but Reber's own testimony also makes clear that he understood that it was solely the government's decision as to whether to make such a motion. (R. Tr. at 13-14; id. at 15 (Reber's testimony that no one had promised him he would get a motion for downward departure in return for his plea); id. at 16 (Reber's testimony that he understood that, even if he thinks he has substantially cooperated, if the U.S. Attorney disagrees and does not file a motion, there is nothing he can do about that.) Again, Reber's statements under oath in open court are entitled to a strong presumption of truthfulness. Lampaziane, 251 F.3d at 524. Those statements preclude any claim now that he thought he was entitled to a motion for downward departure.

Moreover, the government objected to safety valve relief at sentencing, concluding that Reber had not truthfully debriefed. If the government believed Reber did not truthfully debrief about his own offense, then it was highly unlikely that it believed he had offered substantial assistance as to any other matter. It thus had a valid reason for not moving for a downward departure.

Quite simply, the government was not required to move for a downward departure. Where the government retains sole discretion as to whether or not to file a motion based on substantial assistance, the Court may only assess whether the government relied upon an unconstitutional motive in refusing to file the motion. United States v. Garcia-Bonilla, 11 F.3d 45 (5th Cir. 1993). The Court's review of the record discloses no unconstitutional motive, and Reber has not alleged one. Thus, even if Reber's counsel had objected at sentencing due to the failure, the result of the proceedings would not have been different. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Reber has not shown a reasonable probability that he

15

would have received a different sentence and thus cannot establish prejudice. Even if it were not barred by his waiver, therefore, this claim would fail.

In sum, while Reber's ineffective assistance claim as to his plea is denied on the merits, his remaining allegations of ineffective assistance of counsel are barred by his waiver and also fail on their merits. For these reasons, Reber's § 2255 motion is DENIED in its entirety.

### G.     Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Reber has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.

United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Reber is not entitled to a COA as to either of his claims. That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the plea. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of his remaining ineffective assistance of counsel claims, or that they fail on their merits.

## V. CONCLUSION

For the above-stated reasons, Reber's motion under 28 U.S.C. § 2255 (D.E. 30) is DISMISSED WITH PREJUDICE. The Court also DENIES him a Certificate of Appealability.

It is so ORDERED this 2nd day of June, 2008.

_____
Janis Graham Jack
United States District Judge